## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JAY CLOGG REALTY GROUP, INC., 110
North Washington Street, Rockville, Maryland,

       Plaintiff

vs.

                           CIVIL ACTION NO.

BURGER KING CORPORATION,
5505 Blue Lagoon Drive, Miami, Florida

       Defendant.

## CLASS ACTION COMPLAINT

## INTRODUCTION

In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "unrestricted telemarketing . . . can be an intrusive invasion of privacy . . ." 47 U.S.C. § 227, Congressional Statement of Findings #5.  Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited facsimile ("Junk Fax").  See 47 U.S.C. § 227. Plaintiff, Jay Clogg Realty Group, Inc., ("Plaintiff"), on behalf of itself and all persons and entities similarly situated, files this complaint against the Defendant Burger King Corporation ("Burger King"), for its violation of federal telemarketing law.

## THE PARTIES

1.   Plaintiff, Jay Clogg Realty Group, Inc. is a Maryland corporation with a principal place of business at 110 North Washington Street, Rockville, Maryland.

2.   Burger King Corporation is a corporation duly organized under the laws of Florida with a principal place of business at 5505 Blue Lagoon Drive, Miami, Florida.

## JURISDICTION

3.   The District Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (2012).

4.   Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial portion of the facts and circumstances that give rise to the cause of action occurred in this District.

## THE LEGAL BASIS OF THE CLASS CLAIMS

5.   This class action arises from the violation by Burger King of federal law prohibiting privacy violations via invasive telemarketing practices.

6.   The claims of the Plaintiff, and the class of persons it seeks to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

7.   The TCPA was also enacted to protect the property rights of the recipients of unsolicited facsimile advertisements.

8.   The TCPA prohibits the use of a facsimile machine to send unsolicited advertisements for goods and services. See 47 U.S.C. §227(b)(1)(C).

9.   Faxes sent via a computer are also subject to this prohibition. See 47 CFR 64.1200(a)(3) (no person or entity may [u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine . . . ")

10.   The TCPA requires that even facsimile advertisements being sent to consumers who consented to receipt, or with whom the advertiser had an established business relationship, must

include language on the facsimile which clearly informs the recipient that they may request that

future facsimiles cease, and that failure to remove the consumer's facsimile from the

telemarketer's database within thirty days is itself a violation of the TCPA.  These requisites are

referred to as "Compliant Opt Out Notice."  47 U.S.C. §227(b)(2)(D) provides:

> (D) shall provide that a notice contained in an unsolicited advertisement complies
> with the requirements under this subparagraph only if—
>> (i) the notice is clear and conspicuous and on the first page of the
>> unsolicited advertisement;
>> (ii) the notice states that the recipient may make a request to the sender of
>> the unsolicited advertisement not to send any future unsolicited
>> advertisements to a telephone facsimile machine or machines and that
>> failure to comply, within the shortest reasonable time, as determined by
>> the Commission, with such a request meeting the requirements under
>> subparagraph (E) is unlawful;
>> (iii) the notice sets forth the requirements for a request under subparagraph
>> (E);
>> (iv) the notice includes—
>>> (I) a domestic contact telephone and facsimile machine number for
>>> the recipient to transmit such a request to the sender; and
>>> (II) a cost-free mechanism for a recipient to transmit a request
>>> pursuant to such notice to the sender of the unsolicited
>>> advertisement; the Commission shall by rule require the sender to
>>> provide such a mechanism and may, in the discretion of the
>>> Commission and subject to such conditions as the Commission
>>> may prescribe, exempt certain classes of small business senders,
>>> but only if the Commission determines that the costs to such class
>>> are unduly burdensome given the revenues generated by such
>>> small businesses;
>> (v) the telephone and facsimile machine numbers and the cost-free
>> mechanism set forth pursuant to clause (iv) permit an individual or
>> business to make such a request at any time on any day of the week; and
>> (vi) the notice complies with the requirements of subsection (d) of this
>> section;

The Federal Communications Commission ("FCC") has implemented the Opt Out Requirements

at 47 CFR § 64.1200, requiring the following for an Opt Out Notice to be complaint with federal

telemarketing law:

> (iii) The advertisement contains a notice that informs the recipient
> of the ability and means to avoid future unsolicited advertisements.
> A notice contained in an advertisement complies with the

requirements under this paragraph only if—(A) The notice is clear and conspicuous and on the first page of the advertisement; (B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(3)(v) of this section is unlawful; (C) The notice sets forth the requirements for an opt-out request under paragraph (a)(3)(v) of this section; (D) The notice includes—(*1*) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and(*2*) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or e-mail address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and (E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

47  CFR § 64.1200(a)(3)(iii)

11.   If a fax advertiser does not include Compliant Opt Out Notice, that advertiser is precluded from raising an "Established Business Relationship" ("EBR") defense in any litigation arising from that fax advertising. 47 CFR § 64.1200(a)(3)(i-iii)

12.   In fact, failing to provide a Compliant Opt Out Notice on a facsimile advertisement is a separate and distinct violation of the TCPA as well as the FCC promulgating regulations. The TCPA statute provides for a private right of action "based on a violation of ... the regulations prescribed" under the TCPA. See 47 U.S.C. § 227(b)(3)(A). *See also Mims v. Arrow Financial Services, LLC,* 132 S.Ct. 740, 746 (2012) (TCPA "authorizes a private right of action for a violation of the FCC's implementing regulations.").

13.  The TCPA, 47 U.S.C. §227(b)(3), provides a private right of action, as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State, (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receiver $500 in damages for each violation, whichever is greater, or (C) both such actions.

14.   Plaintiff brings this action individually and as the representative of all members of a class, nationwide, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS AS TO THE REPRESENTATIVE PLAINTIFF

15.   On December 17, 2012, December 24, 2012, and January 10, 2013, and other dates (only three of the faxes sent to Plaintiff had a header that states the caller's name, telephone number and the date and time of transmission as required by the TCPA), Burger King and/or its agents transmitted unsolicited facsimile advertisements to the Plaintiff and to thousands of other consumers in Maryland and elsewhere throughout the United States.  Copies of the advertising content sent to Plaintiff are attached as Exhibit 1.

16.   The Plaintiff did not give express or implied prior invitation or permission for the transmission of the advertisements sent to Plaintiff via facsimile by Burger King.

17.   The Plaintiff did not give its prior express consent for the transmission of the advertisements sent to Plaintiff via facsimile by Burger King.

18.   The facsimiles did not contain a Compliant Opt Out Notice, in that the facsimile advertisements do not contain a clear and conspicuous notice informing the recipient that it may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply within 30 days is unlawful. The fax advertisements also do not contain a telephone number to receive requests that the fax advertising cease.

## CLASS ALLEGATIONS

19.  Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States.

20.  Within the past four years, Burger King and/or its agents has engaged in widespread advertising via unsolicited facsimile transmission in violation of the TCPA.

21.  The nature of the facsimile advertising done by Burger King was mass marketing, designed to solicit new customers.

22.  The widespread nature of the fax marketing campaigns at issue is evidenced by the fact that the fax advertisements, while in some instances offering coupons in certain geographic areas, promoted the availability of delivery services from the "BK Delivers" service, which is available in five states and at least 62 Burger King stores. See https://bkdelivers.com/#!areas (last visited February 27, 2013).

23.  The widespread nature of the fax marketing campaign at issue is further evidenced by the fact that the Plaintiff received facsimile advertisements promoting offering coupons and discounted pricing in Houston and New York City, despite the fact that Plaintiff's business is only located in Maryland. See Exhibit A.

24.  Burger King's direct involvement in the fax campaign is indicated by the notice on the advertisements, "TO OPT OUT FROM RECEIVING FAXES, PLEASE SEND YOUR REQUEST TO BKDELIVERS@WHOPPER.COM" and because the @Whopper.com email addresses are utilized by Burger King corporate personnel and Whopper.com is a domain name registered to the Burger King Corporation

25.   Burger King benefits from sales through its BK Delivers program.  Burger King charges its franchisees monthly royalty fees of 4.5% of gross sales, as well as a monthly advertising contribution of 4% of gross sales. See http://www.bk.com/cms/en/us/cms_out/digital_assets/files/pages/NewFranchiseeFaqs.pdf. (last visited February 27, 2013).

26.   As the entity whose goods are being advertised and that benefits from the fax ads, Burger King is liable for the fax advertising.  The TCPA makes it unlawful to "send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).

27.   The Federal Communications Commission has promulgated 47 C.F.R. § 64.1200(a)(3), which defines a "sender" as, "[T]he person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(8).

28.   Prior to codification, this principle had been established by an official FCC interpretation of the TCPA entitled, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12391, 12407 (Aug. 7, 1995), which stated, "[T]he entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements."

29.   Burger King and/or its agents carelessly and recklessly failed to obtain prior express invitation or permission from the Plaintiff and the class members and to take all steps necessary to ensure that its facsimile marketing campaign was compliant with telemarketing law.

30.   To the extent facsimile advertisements were transmitted by Burger King to consumers who had given consent, or had an established business relationship with Burger King, the facsimile advertisements are still in violation of the TCPA as they did not contain the

Compliant Opt Out Notice required by law, making individual issues of consent legally irrelevant.

31.   The class of persons represented by Plaintiff is composed of all persons or entities within the United States to whom Burger King sent, or caused to be sent, facsimile advertisements promoting Burger King and its services, at any time within four years prior to the filing of the instant Complaint.

32.   The class as defined above is identifiable by phone records, fax transmittal records, and fax number databases, used by Burger King and/or its agents, in transmitting its unsolicited facsimile advertisements.

33.   The potential class members number in the thousands and constitute a class so numerous that joinder of all class members is impracticable.  Plaintiff is a member of the class.

34.   There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a.   Whether Burger King violated the TCPA and FCC promulgating regulations by engaging in illegal fax advertising.

b.   Whether the facsimiles sent by Burger King to class members constitute unsolicited advertisements;

c.   Whether the facsimile advertisements at issue contained compliant Opt Out Notice.

d.   Whether the Plaintiff and the members of the class are entitled to statutory damages as a result of Burger King's actions.

35.   Plaintiff's claims are typical of the claims of the class.

36.  Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class, it will fairly and adequately protect the interests of the class, and it is represented by counsel skilled and experienced in class actions, particularly in the prosecution of class actions enforcing the TCPA.

37.  The actions of Burger King are generally applicable to the class as a whole and to Plaintiff.

38.  Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Burger King and/or its agents.

39.  The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

40.  Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

41.  Plaintiff is capable of and is willing to represent the other members of the class.

## CAUSES OF ACTION
## COUNT I: VIOLATION OF THE TCPA

42.  Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

43.  Burger King, and/or its agents, negligently or willfully caused unsolicited facsimile advertisements to be sent to Plaintiff and to the facsimile machines of other members of the class, in violation of the TCPA and the FCC's promulgating regulations.

44.  By causing unsolicited facsimile advertisements to be sent to the class, Burger King violated the privacy rights of class members.

45.   By causing unsolicited facsimile advertisements to be sent to the class, Burger King caused class members to sustain property damage and cost in the form of paper and toner.

46.   By causing unsolicited facsimile advertisements to be sent to the class, Burger King interfered with the class members use of their property as class members facsimile machines were encumbered by the transmission of Burger King's unsolicited facsimile advertisements.

47.   By causing unsolicited facsimile advertisements to be sent to the class, Burger King caused the facsimile machines of class members to be encumbered by the transmission of unsolicited facsimiles.

48.   Burger King failed to provide the requisite notice on its advertisements of a recipient's right to cease receiving such advertisements and a cost free mechanism to make such request.

49.   Failure to provide opt out notice on a facsimile advertisement is a separate and distinct violation of the TCPA as well as the FCC promulgating regulations.  The TCPA statute provides for a private right of action "based on a violation of ... the regulations prescribed" under the TCPA. See 47 U.S.C. § 227(b)(3)(A). *See also Mims v. Arrow Financial Services, LLC,* 132 S.Ct. 740, 746 (2012) (TCPA "authorizes a private right of action for a violation of the FCC's implementing regulations.").

50.   The TCPA provides for statutory damages in the amount of a minimum of $500 for each separate violation of the TCPA.

## COUNT II: INJUNCTIVE RELIEF

51.   Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

52. The TCPA expressly authorizes injunctive relief to prevent future violations of the Act.

53. The Plaintiff, acting on behalf of the Class, respectfully petitions the Court to order Burger King to immediately cease engaging in unsolicited facsimile advertising in violation of the TCPA.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of itself and the other members of the class, the Plaintiff prays for the following relief:

1. That Burger King immediately be restrained from engaging in future telemarketing in violation of the TCPA.

2. That Burger King, its agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify the members of the class.

3. That this Court certify the claims of the named Plaintiff and all other persons similarly situated as class action claims as provided by Rule 23 of the Federal Rules of Civil Procedure.

4. That the named Plaintiff and the other members of the class action so certified be awarded $500 for each negligent violation of the TCPA by Burger King or $1,500 for each willful violation of the TCPA.

5. That the Court enter an appropriate order enjoining Burger King, its agents, or anyone acting on its behalf, from altering, erasing, changing, deleting, destroying or otherwise disposing of any records, including computer disks or computer programs, in its possession or

control which can be used to identify all persons, corporations, or other entities to whom defendants have transmitted unsolicited facsimile advertisements.

6.     That the named Plaintiff and the members of the class be granted such other and further relief as is just and equitable under the circumstances.

## PRESERVATION OF EVIDENCE DEMAND

Burger King or its agents have custody and control of the business records and other information necessary to identify the members of the class including names and telephone facsimile numbers.  Unless immediate injunctive relief is ordered, it is feared that Burger King, or its agents, will alter, erase, delete, destroy or otherwise dispose of the records in their possession which are necessary to identify each recipient of the unsolicited facsimile advertisements being sent by Burger King.  For this reason, the Plaintiff demands that Burger King, its agents, or anyone acting on its behalf, refrain from altering, deleting or destroying any documents or records which could be used to identify the members of the class.

## JURY DEMAND

**THE CLASS PLAINTIFF REQUESTS A JURY TRIAL AS TO ALL CLAIMS OF THE COMPLAINT SO TRIABLE.**

PLAINTIFF,
Jay Clogg Realty Group, Inc.
By its attorneys,


/s/ Stephen H. Ring
Stephen H. Ring (Bar No. 00405)
STEPHEN H. RING, P.C.
506 Main Street, Suite 215
Gaithersburg, MD 20878
Phone: (301) 563-9249
Fax: (301) 563-9639
shr@ringlaw.us

Edward A. Broderick
Broderick Law, P.C.
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 951-3954 facsimile
ted@broderick-law.com
Subject to Pro Hac Vice admission

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
(508) 655-1415
(508) 319-3077 facsimile
mccue@massattorneys.net
Subject to Pro Hac Vice admission

Dated: March 1, 2013