**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| JAY CLOGG REALTY GROUP, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>BURGER KING CORPORATION,<br><br>Defendant. | Civil Action No. 8:13-cv-00662-GJH |

---

**JOINT MEMORANDUM OF LAW IN OPPOSITION TO DR. ERIC GOLDSTEIN D/B/A SPORTS PSYCHOLOGY CENTER, NEFF CORP, AND SONIA BLAIR'S OBJECTION TO CLASS ACTION SETTLEMENT**

---

Joseph D. Wilson (Bar No. 18073)
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
Telephone: (202) 342-8400
Facsimile: (202) 342-8451
E-mail: jwilson@kelleydrye.com

Joseph A. Boyle (*pro hac vice*)
Lauri A. Mazzuchetti (*pro hac vice*)
Nainesh Ramjee (*pro hac vice*)
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054

*Attorneys for Burger King Corporation*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ........ 2

ARGUMENT ........ 4

I. The Settlement Is Presumptively Fair and Adequate. ........ 4

II. The Goldstein Objection Is Moot Because There Will Be No *Cy Pres* Beyond Uncashed or Returned Checks. ........ 6

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

Page

**Cases**

*In re Baby Products Antitrust Litigation*,
708 F.3d 163 (3d Cir. 2013)....................5, 7

*Beaulieu v. EQ Indus. Servs.*,
No. 5:06-CV-400-BR, 2009 U.S. Dist. LEXIS 133023, 2009 WL 2209131 (E.D.N.C. Apr. 20, 2009)....................4

*Brunson v. La.-Pac. Corp.*,
818 F. Supp. 2d 922 (D.S.C. 2011)....................5

*Decohen v. Abbasi, LLC*,
299 F.R.D. 469 (D. Md. 2014)....................4, 5, 7

*Flinn v. FMC Corp.*,
528 F.2d 1169 (4th Cir. 1975)....................4, 6

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991)....................4, 5

*McDaniels v. Westlake Servs., LLC*,
No. ELH-11-1837, 2014 U.S. Dist. LEXIS 16081 (D. Md. Feb. 7, 2014)....................7

*In re Montgomery County Real Estate Antitrust Litig.*,
83 F.R.D. 305 (D. Md. 1979)....................6

**Statutes**

47 U.S.C. § 227....................2, 6

**Other Authorities**

Fed. R. Civ. P. 23....................4

2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992)....................5

Plaintiff Jay Clogg Realty Group, Inc. ("Plaintiff") and Defendant Burger King Corporation ("Burger King" or "Defendant") respectfully submits this Joint Memorandum of Law in Opposition to the Objection of Dr. Eric Goldstein d/b/a Sports Psychology Center, Neff Corp, and Sonia Blair (collectively, the "Objectors") to Class Action Settlement (the "Objection"), ECF No. 96.

**PRELIMINARY STATEMENT**

The Court should overrule the Objectors objection that the proposed Stipulation and Agreement of Settlement ("Settlement"), ECF No. 68-1, "artificially caps" a class member's claim by amount ($500.00 per violation) and number (no more than eight alleged violations), and would fund a "defective" *cy pres* program before making the Settlement Class Members[1] whole. (Objection at 1). First, the Settlement's relief of $500.00—the statutorily prescribed penalty per "junk fax"—for each facsimile up to eight (or up to $4,000.00 per Approved Claimant) is more than adequate relative to the discretionary recovery up to $1,500.00 for willful violations that Settlement Class Members might have proven on their own at trial. But there is no challenge to the adequacy of relief compared to the Class Members' losses. The crux of the objection, instead, is that such a limit on recovery leaves too much of the Settlement Fund for *cy pres* rather than for the Settlement Class as preferred under the law.

The Objection, however, is speculation without basis in fact or law because the $8,500,000.00 Settlement Fund will be exhausted as explained in the Declaration of Lacey Raines of Kurtzman Carson Consultants LLC ("KCC"), the Settlement Administrator (the "KCC Declaration"). (KCC Decl. ¶ 29.)[2] Accordingly, no funds will remain, in the words of the Objectors, to "be siphoned to

---

[1] Capitalized terms herein are defined in the Settlement, Paragraphs 2.01 through 2.49.

[2] The KCC Declaration will be filed as Exhibit A to Plaintiff's Memorandum in Support of Its Motion for Final Approval of Class Settlement.

a *cy pres* program prematurely." (Objection at 3.) The Court should reject the Objection and should enter final approval.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On March 1, 2013, Plaintiff, for itself and a putative class of all other persons or entities similarly situated, sued Burger King for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), claiming that Burger King sent unsolicited facsimile advertisements. (Compl. at 1, ¶¶ 15-21, ECF No. 1.) After litigating for more than 18 months, the parties reached the Settlement. The Settlement defined the Settlement Class as:

> all persons or entities within the United States to whom Defendant sent, attempted to send, or caused to be sent (or attempted) one or more unsolicited facsimile advertisements promoting its goods or services from March 1, 2009 to November 17, 2014. The Parties agree that there are *approximately 97,000 unique facsimile numbers* associated with the Settlement Class.

(Settlement ¶ 2.45 (emphasis added).) Under the terms of the Settlement, Burger King agreed to deposit $8,500,000.00 into the Settlement Fund (to be held by KCC or its designee), which Settlement Fund will be used to pay (a) the Cash Benefits paid to Claimants who submit a Valid Claim Form; (b) the Attorneys' Fees and Costs awarded by the Court; (c) the Incentive Award for the named Plaintiff; and (d) the Settlement Administration Costs. As per the Settlement, Settlement Class Members who file Valid Claims can receive Cash Benefits of up to $500.00 per facsimile received, up to a maximum of eight (or $4,000.00). (*Id.* ¶¶ 4.01, 4.02(a).) "In the event that Approved Claims to be paid out of the Settlement Fund exceed the available cash in the Settlement Fund, all Cash Benefits will be reduced in a *pro rata* proportion." (*Id.* ¶ 4.02(a).) Importantly, the Settlement Administrator will only distribute to *cy pres* leftover cash from the Settlement Fund after payment of all Approved Claims and Fees, Costs and Expenses, or unclaimed funds from uncashed or returned Benefit Checks. (*Id.* ¶¶ 4.02(a), 4.03(g);

*see id.* ¶ 4.03(g) (proposing the Electronic Privacy Information Center in the District of Columbia as *cy pres* designee)). "No portion of the Settlement Fund will be returned to [Burger King]." (*Id.* ¶ 4.02(c).)

On December 2, 2014, the Court conditionally certified the Settlement Class and preliminarily approved the parties' Settlement and the form, manner, and administration of Class Notice. (Preliminary Approval Order ¶¶ 2, 4, 15-18, ECF No. 71.) The Court also ordered the mailing of Class Notice by January 9, 2015; set the Claim, Objection, and Opt-Out Deadlines for March 9, 2015; ordered final approval submissions by April 1, 2015; and scheduled the Final Approval Hearing for April 15, 2015 at 9:30 a.m. (*Id.* ¶ 25.)

KCC received from Burger King

> a computerized list of 97,382 names, addresses, and number of attempts, characterized as the Class Member List, i.e., all persons or entities within the United States to whom Defendant sent, attempted to send, or caused to be sent (or attempted) one or more unsolicited facsimile advertisements promoting its goods or services from March 1, 2009 to November 17, 2014. KCC was later provided with an additional computerized list of 111,642 records of transactional data, which data included the number of facsimile attempts by Defendant per phone number.

(KCC Decl. ¶ 7.) "The transactional data reflects that one fax attempt was made to each of the facsimile numbers identified by [O]bjectors." (*Id.* ¶ 31.)

To date, approximately 8,391 Claims Forms have been received for 22,409 unique facsimiles. (*Id.* ¶ 29.) Assuming the minimum $500.00 recovery under the Settlement per facsimile (22,409 multiplied by $500.00), the total Cash Benefits would be approximately $11,204,500.00, thereby exceeding the anticipated Settlement Fund without consideration of the Incentive Award, Settlement Administrative Costs and Attorneys' Fees and Costs. (*See id.*) The *pro rata* Cash Benefits to be received by Approved Claimants will be approximately $233.33. (*Id.*) The only monies that may potentially go to a *cy pres* recipient are those that remain because an Approved Claimant fails to cash a

Benefit Check. (*Id.* ¶ 30.) Because Approved Claims to be paid out of the Settlement Fund will necessarily exceed the available cash in the Settlement Fund, all Cash Benefits will be reduced in a *pro rata* proportion and no monies will remain for *cy pres* distribution.

**ARGUMENT**

The purpose of objections to any proposed settlement of a nationwide class action is neither to try each issue of an action that any given objector deems to be important, nor is it to peck to death the hard-fought and long negotiated compromise of the parties. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (advising against turning the final hearing into a complete trial on the merits or disposing of unsettled legal issues); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("[A] settlement hearing is not a trial."). An objection is pertinent only if it calls into question the presumption of fairness or adequacy of the Settlement. The Objection does not.

## I. THE SETTLEMENT IS PRESUMPTIVELY FAIR AND ADEQUATE.

"The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Pursuant to *Jiffy Lube*, "[c]ourts in the Fourth Circuit engage in a bifurcated analysis to determine if a settlement is 'fair, reasonable, and adequate' under Rule 23." *Decohen*, 299 F.R.D. at 479. "*[F]airness* . . . focuses on whether the proposed settlement was negotiated at arm's length, and *adequacy* . . . focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs.*, No. 5:06-CV-400-BR, 2009 U.S. Dist. LEXIS 133023, at *68-*69, 2009 WL 2209131 (E.D.N.C. Apr. 20, 2009) (emphasis added) (citing *Jiffy Lube*, 927 F.2d at 158-59); *see Jiffy Lube*, 927 F.2d at 158-59 (listing four fairness factors and five adequacy factors).

> In assessing the fairness and adequacy of a proposed settlement, there is a *strong initial presumption that the compromise is fair and reasonable*. Courts have recognized that settlements, by definition, are compromises *which need not satisfy every single concern of the plaintiff class*, but may fall anywhere within a broad range of upper and lower limits.

*S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (emphasis added) (citations omitted) (internal quotation marks omitted); *see Decohen*, 299 F.R.D. at 479 ("strong presumption" (citations omitted) (internal quotation marks omitted)); *Brunson v. La.-Pac. Corp.*, 818 F. Supp. 2d 922, 927 (D.S.C. 2011) (explaining that the "'presumption of fairness exists where'" there is "'arm's-length bargaining," sufficient discovery, experienced counsel, and "'the percentage of objectors is small'" (quoting 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992))). Approval of a proposed settlement following a fairness hearing lies within a trial court's sound discretion. *Jiffy Lube*, 927 F.2d at 158.

As demonstrated by Plaintiff, the Settlement negotiations occurred at arm's length, there was sufficient discovery, and the proponents of the settlement are experienced in similar litigation. (Pl.'s Mem. in Supp. of Mot. for Final Approval at 10-19.) The record establishes that the parties conducted sufficient discovery to identify and determine adequate relief for class members. (*Id.* at 19, 22.)

The Objectors do little to suggest why the $4,000.00 cap per unique facsimile number is not fair or adequate. And significantly, none of the Objectors can credibly claim they were sent or received more than eight facsimiles – rather, Burger King's records show they each was sent only a single facsimile. Further, as courts and the Objectors recognize, settlements are compromises. *Stone*, 139 F.R.D. at 339; (Objection at 5); *see In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013) ("The role of a district court is not to determine whether the settlement is the fairest possible

resolution."). Even "a cash settlement [that] may only amount to a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair" according to the Fourth Circuit. *Flinn*, 528 F.2d at 1173-74; *see, e.g.*, *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 833 (E.D.N.C. 1994) (approving recovery of approximately 5% of the plaintiffs' loss). Not insignificantly, the Approved Claimants are expected to receive approximately $233.33 per facsimile, which is well in line with other TCPA settlements. *See* 47 U.S.C. § 227(b)(3) ($500.00 to $1,500.00 per violation); (*see also* Pl.'s Mem. at 14-17).

Finally, only three out of approximately 97,000 Settlement Class Members (*i.e.*, 0.003%) objected to the Settlement. Because even significant opposition among class members does not necessarily upset the fairness and adequacy of a settlement under Fourth Circuit precedent, *Flinn*, 528 F.2d at 1173; *see, e.g.*, *In re Montgomery County Real Estate Antitrust Litig.*, 83 F.R.D. 305, 318 (D. Md. 1979) (approving settlement where 6% objected), the Objectors' singular objection fails to overcome the Settlement's presumption of fairness.

## II. THE OBJECTION IS MOOT BECAUSE THERE WILL BE NO *CY PRES* BEYOND UNCASHED OR RETURNED CHECKS.

The Settlement Fund will be depleted by Approved Claims. (KCC Decl. ¶ 29.) The Settlement's *cy pres* distribution, and the Objectors' concerns therewith, are moot. *See Bezdek v. Vibram USA Inc.*, No. 12-10513-DPW, 2015 U.S. Dist. LEXIS 5508, at *4 n.2, *11 n.5 (D. Mass. Jan. 16, 2015) (explaining that the exhaustion of the settlement fund mooted the *cy pres* provision, and not considering objection thereto); *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1313 (9th Cir. 1990) (Fernandez, J., concurring) (noting the "possib[ility] that virtually all of the funds will be distributed to those entitledto them," mooting the *cy pres* issue).

Taking a closer look, Burger King agrees with the Objectors that "ordinarily it is not only acceptable, but also necessary to include a residual *cy pres* program to ensure there is no reversion of unclaimed funds to the defendant." (Objection at 5.) While the Fourth Circuit is silent, c*y pres* awards in class action settlements are commonplace in Maryland federal courts. *See, e.g.*, *Decohen*, 299 F.R.D. at 476 (approving *cy pres* award); *McDaniels v. Westlake Servs., LLC*, No. ELH-11-1837, 2014 U.S. Dist. LEXIS 16081, at *31-*33 (D. Md. Feb. 7, 2014) (same and listing approving Maryland cases). The nonbinding cases from sister Circuits relied upon by the Objectors scrutinize the award of *cy pres* distributions that were approved by district courts before further, economically feasible distribution to ascertainable class members. *See In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060, 1062 (8th Cir. 2015) (reversing because "a further distribution to the classes is feasible"); *In re Baby Prods.*, 708 F.3d at 174 (suggesting "inclusion of a mechanism for additional payouts to individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the settlement fund"); *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 478 n.29 (5th Cir. 2011) ("[T]his is not a case where it was not feasible to make further distributions to any of the class members."); *but see In re BankAmerica Corp. Secs. Litig.*, 775 F.3d at 1071 (Murphy, J., dissenting) (distinguishing the appropriateness of *cy pres* awards under *In re Baby Products*, *Klier*, and *In re Lupron Marketing*). Further distribution is not a valid with the Settlement because Class Notice went to the approximately 97,000 unique facsimiles comprising the Settlement Class, and what remains after fees and costs will pay all Approved Claims and not be distributed to *cy pres*. (*See* KCC Decl. ¶¶ 7-9, 14-15, 20-21.)

Lastly, the Objectors do not offer a feasible alternative to the claimed but uncashed or returned Benefit Checks going to *cy pres* pursuant to the Settlement, (*see* Objection at 5), which be *de minimis*. The Settlement Administrator could conceivably increase the *pro rata* shares of Approved

Claimants in response to uncashed or returned Benefit Checks, but not without significantly increasing the fees and costs associated thereto. The Objectors rely upon a decision affirming a *cy pres* distribution wherein the First Circuit held that "[t]he district court appropriately decided that a supplemental consumer claims process would be prohibitively expensive, time-consuming, and . . . would likely recruit few new claimants." *In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 31-32 (1st Cir. 2012). After reasonably ascertaining Settlement Class Members, the Settlement Administrator will attempt to pay all Approved Claimants. Any *de minimis* residual in the Settlement Fund resulting from uncashed or returned Benefit Checks is properly distributed to *cy pres* to ensure that "[n]o portion of the Settlement Fund will be returned to [Burger King]." (Settlement ¶ 4.02(c).)

**CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court overrule the Objection and grant final approval to the Settlement and enter the Final Approval Order and Judgment in the form submitted by Plaintiff.

Respectfully submitted for PLAINTIFF,

Jay Clogg Realty Group, Inc.
By its attorneys,

Edward A. Broderick
Broderick Law, P.C.
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 951-3954 facsimile
ted@broderick-law.com
*Pro Hac Vice*

Stephen H. Ring (Bar No. 00405)
STEPHEN H. RING, P.C.
506 Main Street, Suite 215
Gaithersburg, MD 20878
Phone: (301) 563-9249
Fax: (301) 563-9639
shr@ringlaw.us

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
(508) 655-1415
(508) 319-3077 facsimile
mccue@massattorneys.net
*Pro Hac Vice*

Dated: April 1, 2015

Respectfully submitted for DEFENDANT,

KELLEY DRYE & WARREN LLP

By: /s/ Joseph D. Wilson

Joseph D. Wilson (Bar No. 18073)

Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
Telephone: (202) 342-8400
Facsimile: (202) 342-8451
E-mail: jwilson@kelleydrye.com

Joseph A. Boyle (*pro hac vice*)
Lauri A. Mazzuchetti (*pro hac vice*)
Nainesh Ramjee (*pro hac vice*)
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054

*Attorneys for Burger King Corporation*

Dated: April 1, 2015

**CERTIFICATE OF SERVICE**

I certify that on the first day of April 2015, I served a copy of the foregoing Joint Memorandum of Law in Opposition to Dr. Eric Goldstein D/B/A Sports Psychology Center, Neff Corp, and Sonia Blair's Objection to Class Action Settlement on all Counsel of Record via ECF.

/s/ Joseph D. Wilson
Joseph D. Wilson (Bar No. 18073)
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
Telephone: (202) 342-8400
Facsimile: (202) 342-8451
E-mail: jwilson@kelleydrye.com

*Attorneys for Burger King Corporation*